# IN THE SUPREME COURT OF THE STATE OF DELAWARE

CHRISTOPHER MILLER, an individual, and CHRISTOPHER MILLER and LINDSAY MILLER as trustees of the C & L MILLER REVOCABLE TRUST,

Plaintiffs Below, Appellants,

v.

HCP TRUMPET INVESTMENTS, LLC, HISPANIA PRIVATE EQUITY II, L.P., HISPANIA INVESTORS II LLC, CARLOS SIGNORET, JASON SHAFER, MARK RUSSELL, and VICTOR MARURI,

Defendants Below, Appellees.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 107, 2018

Court Below: Court of Chancery of the State of Delaware

C.A. No. 2017-0291

Submitted: September 12, 2018
Decided: September 20, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en banc*.

## <u>ORDER</u>

(1) Christopher Miller individually, and Miller and Lindsay Miller as trustees of the C & L Miller Revocable Trust, appeal from a Court of Chancery decision dismissing the Millers' complaint for breach of the implied covenant of good faith and fair dealing in an operating agreement for Trumpet Search LLC, an

entity co-founded by Christopher Miller. The dispute arose when the Trumpet board agreed to sell Trumpet to MTS Health Investors, LLC. According to the Millers, the implied covenant of good faith and fair dealing required the Board to conduct a *Revlon*-type or "open-market" sale process before selling the company to MTS.[1]

(2) The Court of Chancery found that the Trumpet operating agreement "explicitly vests the Board with sole discretion as to the manner in which a sale is conducted, subject to the limitation that the company is ultimately sold to an unaffiliated third-party buyer."[2] Thus, the implied covenant could not be used to engraft implied terms onto an operating agreement where the parties had expressly addressed the sale issue. Alternatively, the court decided that "the Plaintiffs have failed to point to any provision in the [operating agreement] that suggests the parties would have proscribed the manner in which Trumpet was marketed and sold if the issue had come up at the time of contracting."[3]

(3) The operating agreement provision relied on by the Court of Chancery– Section 8.06(a)—did not address how the company was to be sold. Instead, it gave the Board "sole discretion" to structure the transaction as it saw fit after agreeing to sell the company.[4] Even if, as the Court of Chancery found, the "sole discretion"

---

[1] *Revlon, Inc. v. MacAndrews & Forbes Hold., Inc.*, 506 A.2d 173 (Del. 1995).
[2] *Miller v. HCP & Co.*, 2018 WL 656378, at *10 (Del. Ch. Feb. 1, 2018).
[3] *Id*. at *12.
[4] Section 8.06(a) provided that "the Board shall determine in its sole discretion the manner in which [a sale of all Trumpet membership units to an independent third party] shall occur, whether

2

language of Section 8.06(a) applied to the way in which Trumpet was sold, the mere vesting of "sole discretion" did not relieve the Board of its obligation to use that discretion consistently with the implied covenant of good faith and fair dealing.[5] Likewise, the fact that the operating agreement had more specific provisions addressed to conflict-of-interest transactions has relevance to the application of the implied covenant, but does not vitiate its application.

(4)     But, we agree with the Court of Chancery's essential holding that the implied covenant could not be used to imply *Revlon*-type sale requirements in the Trumpet operating agreement.  Before the Court of Chancery, the Millers argued for the broad proposition that the implied covenant imposed an obligation to fulfill the same basic duties required of a corporate board as *Revlon*.  Before us, the Millers' counsel candidly admitted that this was their key theory below and that they did not make more specific arguments that particular bad faith actions by the defendants

---

as a sale of assets, merger, transfer of Membership Interests or otherwise."  App. to Opening Br. at A80 (Operating Agreement).

[5] *Compare Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL 3505355, at *32 (Del. Ch. Aug. 8, 2011) (holding that a provision granting the general partner "sole discretion" without "further flesh[ing] out what that term means . . . simply says that" the general partner "has the singular (i.e., sole) authority (i.e., discretion) to consider and decide this matter"), *with* Paul M. Altman & Srinivas M. Raju, *Delaware Alternative Entities and the Implied Contractual Covenant of Good Faith and Fair Dealing Under Delaware Law*, 60 BUS. LAW. 1469, 1484 (2005) (illustrating how room for the application of the implied covenant can be narrowed by using the words "sole discretion" along with language saying that the party granted that discretion may "consider only such interests and factors as it desires, including its own interests," and eliminating any "duty or obligation to give any consideration to any interest of or factors affecting the" entity or its investors).

3

breached the implied covenant. Although we do not agree with the Court of Chancery that the terms of Section 8.06(a) displaced the implied covenant altogether, we do believe that it correctly addressed the precise argument made to it. The operating agreement's clear elimination of fiduciary duties[6] is inconsistent with the plaintiff's argument that the agreement's implied covenant subsumes the affirmative duties imposed upon corporate boards in the change of control context by *Revlon*. Although there are aspects of the record here that arguably could have supported a more targeted claim of contractual impropriety, the plaintiff did not attempt to advance targeted claims of that type below or before us. Therefore, because it properly addressed the precise claim made to it, the Court of Chancery properly dismissed the complaint.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[6] App. to Opening Br. at A65 (Operating Agreement, § 3.09) ("Notwithstanding any other provision of this Agreement or any duty otherwise existing at law or in equity, no Manager of the Board shall, to the fullest extent permitted by law, owe any duties (including fiduciary duties) to the Members or the LLC; provided, however, that the Board of Managers shall have the duty to act in accordance with the implied contractual obligation of good faith and fair dealing.").